* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant-employer.
3. The carrier liable on the risk is correctly named above.
4. The plaintiff's average weekly wage is $643.00.
5. The parties submitted as evidence the following documents:
 a. The Pre-Trial Agreement was marked as Stipulated Exhibit number 1.
 b. Stipulated Exhibit number 2 consisted of three Industrial Commission Form 18s, a Form 33, Form 33R, Form 61, Defendants' Responses to Plaintiff's Interrogatories, and Plaintiff's Responses to Defendants' Interrogatories.
 c. Stipulated Exhibit number 3 consisted of Medical Records.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 51 years of age, and married with five children. He completed the ninth grade, but has not obtained a high school equivalency certificate by passing the General Educational Development Test ("GED") or had any further education.
2. Prior to his employment with the defendant-employer in 1991, plaintiff worked at Texfi for 13 years in the dye room. In his first position with defendant-employer, plaintiff worked in the area of casting engine blocks, where he ran a machine that cuts holes in engine blocks. This job did not require heavy lifting.
3. Plaintiff was later transferred to the "upfit" department, where he assembled engine parts. This job required him to lift 60 to 80 pounds on a regular basis.
4. On or about January 2, 2002, as plaintiff picked up an air compressor, he felt pain in his lower back. Plaintiff did not immediately report his injury, but continued working. He thought he might have "pulled a muscle" but did not seek medical attention at that time. Although plaintiff testified at the hearing before the Deputy Commissioner that he thought he had seen the plant nurse, the medical records did not show a visit that day.
5. Over the next few months, plaintiff's back pain grew worse. The pain began radiating into his right leg, making it difficult for him to stand up straight or bend over. Plaintiff had difficulty performing his job duties as a result of this pain, but continued to work.
6. Plaintiff is diabetic and gets regular checkups for his diabetes. However, his medical record with defendant-employer's plant nurse revealed that plaintiff rarely sought medical treatment while at work. The Full Commission finds that the fact plaintiff did not seek medical treatment immediately after the incident is consistent with his thought that his injury was not serious at the time, but was a back strain. Plaintiff further testified that he needed a job and was reluctant to say anything about his back pain until it got so bad that he sought medical treatment in May 2002.
7. On May 7, 2002, plaintiff presented to Dr. Ehly, his family physician, at Oakwood Medical Center. Dr. Ehly released plaintiff from work until May 9, 2002, and recommended that a lumbar MRI be performed. This MRI was done on May 13, 2002, and revealed a broad-based herniated disc at L4-5 with a free fragment in the epidural space.
8. After the MRI results were received, plaintiff was referred to Dr. Nelson, an orthopedic specialist at Rocky Mount Orthopaedics Center. Plaintiff presented to Dr. Nelson on May 23, 2002. Consistent with his testimony, plaintiff reported to Dr. Nelson that after moving to a different position at work the first of the year, he started having lower back pain, and tingling down his leg. Dr. Nelson reviewed the x-rays and MRI results and advised plaintiff that conservative treatment was often helpful, and that if he did not improve, surgical intervention might be recommended. Dr. Nelson then referred plaintiff to Dr. Macedo, a neurosurgeon, at Rocky Mount Neurosurgical, for further evaluation.
9. Plaintiff presented to Dr. Macedo on June 27, 2002, explaining to Dr. Macedo that he injured his low back on the job after lifting an air compressor. In addition to low back pain, plaintiff was experiencing right leg pain. After examining plaintiff and reviewing the MRI results, Dr. Macedo recommended surgery.
10. The following day, June 28, 2002, plaintiff spoke with Charlotte James, defendant-employer's occupational health nurse, about filing a workers' compensation claim. Plaintiff told Ms. James that he believed he had hurt his back four to six months prior when he first went to the upfit department and lifted an air compressor.
11. On July 3, 2002, plaintiff underwent a right L4-5 minimally invasive lumbar laminotomy and disc removal, performed by Dr. Macedo. Plaintiff did well post-surgery and his right leg pain improved, although he continued to have some lower back pain.
12. Dr. Macedo testified that plaintiff's recovery was somewhat delayed by his diabetes. When Dr. Macedo last saw plaintiff on May 22, 2003, he released plaintiff to return to work in a light duty or sedentary capacity. Dr. Macedo testified this would be consistent with no lifting over 15-20 pounds and avoiding frequent bending. He assessed plaintiff with a ten percent (10%) permanent impairment to his back, consistent with the North Carolina Industrial Commission Guidelines and plaintiff's residual back pain.
13. Dr. Macedo opined that plaintiff's back injury was most likely caused by the heavy lifting involving the air compressor. There is no other medical evidence that contradicts Dr. Macedo's opinion.
14. Defendant-employer terminated plaintiff's employment in May 2003, and plaintiff has not worked since May 7, 2002. Plaintiff testified that he contacted North Carolina Vocational Rehabilitation and was told that they would contact his doctors and then call him, but he never heard from them.
15. At his deposition on January 11, 2006, plaintiff testified that he applied for and received unemployment benefits. During the nine months that he received these benefits, plaintiff testified that he looked for employment but was unsuccessful. He testified that he contacted approximately ten employers every two weeks. In addition, plaintiff testified that he contacted Manpower to find employment but never received a response.
16. After his unemployment benefits terminated, plaintiff testified that he continued to look for work through advertisements in the newspaper. Some of the companies he applied to included Hospera, Tyco Plastics and Sara Lee for forklift driving positions; and Carlyle Plastic, U.S. Parcel Post, McLane's, Southwire, Sprint, Nash General Hospital and Owens-Brockway for janitorial positions. Plaintiff was unsuccessful in securing employment.
17. Plaintiff testified that he was sent to a pain clinic for his back where an unsuccessful attempt was made to inject steroids into his back sometime in April 2005. After April, plaintiff did not seek employment.
18. Since the epidural injections were unsuccessful, Dr. Ely recommended surgery; however, plaintiff has declined to pursue this course of treatment. He continues to present to Dr. Ely for conservative treatment and also to seek employment within his restrictions through the classified advertisements in the newspaper.
19. The Full Commission finds that after a reasonable effort, plaintiff has been unable to find suitable employment within his restrictions.
20. The Full Commission finds that plaintiff has met his burden of proving disability due to his work restrictions, age, limited experience and lack of suitable employment opportunities. The defendants failed to produce evidence that suitable jobs are available for the plaintiff and that he is capable of obtaining them.
21. Defendant-employer offers a salary continuation plan. Under this plan, plaintiff received his full salary for the first three months he was out of work beginning May 7, 2002. For the next three months, plaintiff received seventy-five percent (75%) of his salary, for 6 months of total benefits. Plaintiff applied for, but was denied, benefits under the employer's long-term disability plan. There was insufficient evidence to reveal whether defendant-employer's salary continuation plan was entirely funded by defendant-employer.
22. Although plaintiff did not immediately report his injury, the evidence shows this was because he did not believe it was serious when it first occurred. The evidence fails to establish that defendants were prejudiced by the delay in reporting.
23. Plaintiff's average weekly wage of $643.00 yields a compensation rate of $428.69.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On or about January 2, 2002, plaintiff sustained an injury by accident as a result of a specific traumatic incident arising out of and in the course of his employment with defendant-employer, when he was lifting an air compressor unit, resulting in injury to his back. N.C. Gen. Stat. § 97-2(6).
2. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982).
3. An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485
(2001); Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc.,supra.
4. As a result of his compensable injury by accident on or about January 2, 2002, plaintiff has been unable to earn wages in the same or any other employment from May 7, 2002 and continuing. N.C. Gen. Stat. § 97-29.
5. As a consequence of his compensable back injury, plaintiff has sustained a ten percent (10%) permanent impairment to his back. As plaintiff is awarded benefits for temporary total disability compensation benefits, this award is held in abeyance. N.C. Gen. Stat. § 97-31(23).
6. As a result of his compensable injury of January 2, 2002, plaintiff is entitled to payment of all medical expenses incurred or to be incurred, including the surgery performed by Dr. Macedo, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
7. The amount of credit to be allowed an employer and its insurance company for a salary continuation plan funded entirely by the employer is within the sound discretion of the Industrial Commission and must be approved by the Commission before it can be deducted. Evans v.ATT Technologies, 103 N.C. App. 45, 404 S.E.2d 183, rev'd on othergrounds, 332 N.C. 78, 418 S.E.2d 503 (1992); Moretz v. Richards Assocs., 74 N.C. App. 72, 327 S.E.2d 290 (1985), modified on othergrounds, 316 N.C. 539, 342 S.E.2d 844 (1986). In the present case, there was insufficient evidence to reveal whether defendant-employer's salary continuation plan was entirely funded by defendant-employer.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee awarded herein, defendants shall pay total disability compensation to plaintiff for his compensable injury by accident in the amount of $428.69 per week beginning May 22, 2003, and continuing until further Order of the Industrial Commission. Any amount that has accrued shall be paid in a lump sum, also subject to the attorney's fee award.
2. The award to plaintiff for temporary partial disability compensation pursuant to N.C. Gen. Stat. § 97-31(23) for his ten percent impairment to his back is held in abeyance during plaintiff's receipt of temporary total disability compensation benefits pursuant to N.C. Gen. Stat. § 97-29 but is also subject to the attorney's fee awarded herein.
3. As a consequence of his injury by accident of January 2, 2002, defendants shall pay plaintiff's medical expenses incurred or to be incurred, including the surgery performed by Dr. Macedo, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or tend to lessen plaintiff's period of disability.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff in Paragraphs 1 and 2 of this Award is hereby approved for plaintiff's counsel and shall be deducted from sums due plaintiff and paid directly to plaintiff's counsel. Twenty-five percent (25%) of the lump sum amounts due plaintiff shall be deducted from said amount and paid directly to plaintiff's counsel in one lump sum; thereafter, defendants shall pay every fourth check due plaintiff to plaintiff's counsel. All benefits having accrued shall be paid in a lump sum, subject to the attorney's fee.
5. Defendants shall pay the costs.
 S/______________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________________ THOMAS J. BOLCH COMMISSIONER